# Cooper & Kirk

Lawyers
A Professional Limited Liability Company

David H. Thompson  
dthompson@cooperkirk.com

1523 New Hampshire Avenue, N.W.  
Washington, D.C. 20036

(202) 220-9600  
Fax (202) 220-9601

June 20, 2025

**VIA ACMS**
Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

     RE: *Christian v. James*, No. 24-2847

Dear Ms. Wolfe:

     I write in response to the State's supplemental submission of *Zherka v. Bondi*, 2025 WL 1618440 (2d Cir. June 9, 2025). The State suggests *Zherka* blesses its effort to justify the presumptive carry ban with laws from the late 19th century that were aimed at *depriving* African Americans of their rights. The State is wrong.

     While *Zherka* reiterated this Court's statement in *Antonyuk* that Reconstruction-era history can be relevant, *see id.* at *7 & n.14, all *Antonyuk* said was that 1791 and 1868 are *both* "focal points" of the analysis. *Antonyuk v. James*, 120 F.4th 941, 972, 974 (2d Cir. 2024). *Antonyuk* dealt with a situation in which the Court determined, based on the record before it, that practices at both periods were consistent. It did not hold that inconsistent Reconstruction practices could override Founding practices; any such holding would be inconsistent with *Bruen*. *See* Christian Resp. 14–16, Doc. 49.1.

     Nor does *Zherka* sanction the State's reliance on laws pursuing racist ends. In *Zherka*, the Court concluded that certain historical laws demonstrated the principle that the government could make status-based determinations of dangerousness a basis for disarmament—even if such determinations at the Founding resulted in laws that are "offensive to contemporary moral sensitivities." *Zherka*, at *13. In other words, the "how" and the "why" of those historical laws (the desire to keep people

# Cooper & Kirk
### Lawyers

Catherine O'Hagan Wolfe, Clerk
June 20, 2025
Page 2 of 2

perceived to be dangerous from bearing arms) were unobjectionable in the panel's estimation, even if the social realities that motivated them (such as individuals being held in bondage and therefore presenting a risk of violent revolt) *were* rooted in racism. This case is different. The purpose of the 1860s laws the State relies upon was wholly illegitimate: to throttle the Second Amendment rights of newly freed citizens and force them back on the plantations. Christian Resp. 55–56. They were inconsistent with military orders seeking to secure Second Amendment rights, because those orders stated that they did not authorize carrying on another's premises "*against* his consent," JA 1750 (emphasis added), not "*without* his consent," State Reply 16, Doc. 52.1 (emphasis added).

Sincerely,

Nicolas Rotsko
FLUET & ASSOCIATES, PLLC
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102
(703) 590-1234
nrotsko@fluet.law

/s/David H. Thompson
David H. Thompson
Peter A. Patterson
William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com

*Counsel for Plaintiffs-Appellees*

cc: All counsel of record via ACMS